## KANSAS CITY SOUTHERN RY. CO. v. STATE et al.

No. 8890—Opinion Filed Jan. 28, 1919.

(178 Pac. 662.)

(Syllabus.)

1. Railroads—Stopping of Trains—Order of Corporation Commission — Reasonableness.

From an examination of the record in this case, the order of the Corporation Commission, requiring the Kansas City Southern Railway Company to stop two of its trains, upon being flagged, at a point called Baptist, is held to be unreasonable, unjust, and void.

2. Railroads—"Adequate and Reasonable Facilities."

"The term 'adequate and reasonable facilities' is not capable of exact definition, being a relative expression, and calls for such facilities as may be fairly demanded; regard being had to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost." M., K. & T. Ry. Co. v. Town of Norfolk, 25 Okla. 325, 107 Pac. 172, 29 L. R. A. (N. S.) 159.

Appeal from State Corporation Commission.

The Kansas City Southern Railway Company brings error from an order of S. P. Wilson and others, as members of the Corporation Commission, requiring the company to establish a flag station or stop certain trains when flagged at a certain point. Order relating to stopping of trains when flagged reversed.

J. R. Cottingham and S. W. Hayes, for plaintiff in error.

McNEILL, J. This is an appeal from an order of the Corporation Commission, requiring the Kansas City Southern Railway Company to establish a flag station, or stop certain trains upon being flagged, at Baptist, a point on its railroad which is 4.6 miles from Watt, Okla., and 3.4 miles from Westville, Okla. From an order of the Corporation Commission requiring the stopping of two of its said trains, the railroad has appealed to this court. One of the grounds upon which said appeal is based is "that said order is unreasonable, unjust, and void."

The facts of the case, as shown by the record, are that Baptist, so far as being a town or village is concerned, is a myth, but is a thickly settled farming community. At this place there is no store, post office, school, blacksmith shop, of business of any kind, no side tracks, switches, or section house, but is merely a point which has been designated as Baptist. The record discloses that some five or six years prior to the time of filing this petition with the Corporation Commission the Kansas City Southern Railway Company did stop its train by flagging at this point, a mail station and post office were established at this point, but they were discontinued some five or six years ago. In 1915 a petition was presented to the Corporation Commission, signed by 130 residents of this vicinity, who resided all the way from 1 to 10 miles from this point, requesting that the railroad be required to stop its trains at this station. The court made an order requiring the railroad to stop two trains a day at this point, one going in each direction, upon being flagged. A record was to be kept for a period of 90 days of the number of passengers patronizing said station, and a record was kept for seven months. The record discloses that the total amount of fares received from inbound passengers for November, 1915, was $2.44, outbound passengers, $4.84; December, inbound passengers, $3.24, outbound passengers, $5.20; January, 1916, inbound passengers, $3.08, outbound passengers, $6.78; February, inbound passengers, $3.54, outbound passengers, $7.49; March, inbound

passengers, $8.22, outbound passengers, $8.08; April, inbound passengers, $7.33, outbound passengers, $13.86; May, inbound passengers, $3.82, outbound passengers, $2.96.

The record discloses that the average number of passengers per month, inbound and outbound, was 37; that the average total revenue per month was 23 cents per passenger. The record discloses that the approximate cost of stopping and starting a train at this point would be 45 cents, or almost twice the revenue derived from passengers. If this were a station or a village that would justify some one in establishing a business of some character, there might be some justification for the people demanding or requesting the trains to stop at this particular point, but the record discloses that this is nothing more than a farming community between two stations which are between 8 and 9 miles apart.

It is the contention of the plaintiff in error that this order is unreasonable and unjust. There has been no appearance on behalf of the petitioners or the Corporation Commission, and no brief has been filed by them in compliance with rule 7 of this court (47 Okla. vi, 165 Pac. vii). The record and evidence have been examined and consideration given to the case on its merits. This court has laid down and held the rule as to giving adequate and reasonable railroad facilities to communities to be as follows, to wit:

"The term 'adequate and reasonable facilities' is not capable of exact definition, being a relative expression, and calls for such facilities as may be fairly demanded; regard being had to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost." M., K. & T. Ry. Co. v. Norfolk, 25 Okla. 325, 107 Pac. 172, 29 L. R. A. (N. S.) 159; St. L. & S. F. Ry. Co. v. Reynolds, 26 Okla. 804, 110 Pac. 668, 138 Am. St. Rep. 1003; S. L. & S. F. Ry. Co v. Pollard, 29 Okla. 330, 116 Pac. 784.

In the case of M., K. & T. Ry. Co. v. Norfolk, supra, Justice Williams, speaking for the court, discussed the question very ably and fully, and we see no reason for not applying the same rule to the case at bar.

The company has established railroad facilities at Watt and Westville, Okla. There is no complaint about their being sufficient. They are between 8 and 9 miles apart. At both places, the record discloses, are banks, business houses, and stores of all charac-

ters. It is within the common knowledge of all that stations in farming communities are usually and ordinarily from 7 to 10 miles apart in Oklahoma, and at both of these places there appears to be sufficient railroad facilities, or at least no complaint has been made that the railroad facilities there are not adequate. The people in and around the point known as Baptist all do their banking business and trading, either at Watt or Westville. The question then arises, Do these people have adequate and reasonable facilities to the railroad? Do they have what is usually furnished to people like situated in the state of Oklahoma. The people of this community are entitled to have the same railroad facilities of other like communities within the state of Oklahoma. If this order is reasonable and just, then there is not a farming community in the state where the people are from 3½ to 4½ miles from trading points which have sufficient railroad facilities, and where they do their banking and trading, but what can require the railroad to stop its trains, not at places where switches and depots are maintained, but at points on its main line, and the rural districts, between towns. There is no contention that these people do not have the same railroad facilities that other localities in the state have. It cannot be said but what this would certainly interfere with the efficient operation of the railroad, and no sufficient benefit could be derived from the same. It does not seem that the stopping of trains between towns or villages could be such facilities as could be fairly demanded by the people of any community, especially where the people of that community have railroad facilities within 3½ to 4½ miles at their disposal. If no one has found it profitable to establish any kind or character of business at this point, it would seem to be unreasonable and unfair that the railroad company should have to establish its business at this place, or to stop its trains, or permit them to be stopped, by persons who would flag the same at this point on its railroad, where there are no side tracks. section house, nor any place of business, especially when the revenue derived from the same does not equal the extra cost incurred. This would greatly impair the efficiency of the railroad, and the order requiring the company to stop its trains upon being flagged at this point would be an unreasonable and unjust order.

The order of the Corporation Commission, relating to the stopping of trains at Baptist upon being flagged, is therefore reversed.

All the Justices concur.